## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KESSLER DENTAL ASSOCIATES, P.C.,

        *Plaintiff,*

v.

THE DENTISTS INSURANCE COMPANY,

        *Defendant.*

Case No. 2:20-cv-03376-JDW

## MEMORANDUM

Even before Covid-19, the question on everyone's mind when going to the dentist was the same, "Is it safe?"[1] The Covid-19 pandemic heightened those safety concerns, not just for dentists but for all types of business in Pennsylvania and around the country. In an effort to mitigate these risks and ensure that things are, in fact, safe, governments have restricted business operations, including dental offices. Stuck between a rock and a hard place, many of those businesses have turned to their insurers for relief.

Kessler Dental Associates is one such business. It has sued its insurer, The Dentists Insurance Company, for declining a claim for coverage for losses it has incurred. The Court sympathizes with Kessler Dental. But it cannot ignore that Kessler Dental purchased an insurance policy that does not cover the losses that

---

[1] Marathon Man (Paramount Pictures 1975).

it suffered. At the risk of being labeled an anti-Dentite,[2] the Court will grant Dentists Insurance's motion to dismiss.

I.     BACKGROUND

A.     The Policy's Coverages

Kessler Dental operates a dental practice in Phoenixville, Pennsylvania. It receives commercial property insurance coverage from Dentists Insurance under a policy from January 2020. Among other things, the Policy includes Loss of Income coverage that provides coverage in the event of certain interruptions to Kessler Dental's business. It includes both Dental Practice Income loss coverage and Civil Authority loss coverage.

The Policy provides that Dentists Insurance will pay for "direct physical loss of or physical damage to covered property, subject to all limitations and exclusions. . . ." (*Id.* at 19.) The coverage includes Dental Practice Income loss that Kessler Dental sustains "during the period of restoration caused directly by a necessary suspicion of [the] dental practice," if the suspension was "the direct result of a covered loss or damage to the insured property. . . ." (ECF No. 11-1 at 14.)  The "period of restoration" begins "on the date of covered loss or damage to insured property. . . ." and ends when the property is repaired, the practice starts to earn income, or two years following the date of loss. (ECF No. 11-2 at 35.) The Policy also covers "extra expense[s]" incurred "during the period of restoration

---

[2] *Seinfeld: The Yada Yada* (NBC Broadcast April 24, 1997).

that the [business] would not have sustained but for the loss or damage to [the] real property or business personal property. . . ." (ECF No. 11-1 at 15).

The "Civil Authority" provision covers loss of Dental Practice Income and extra expenses incurred when a civil authority prohibits access to the business "because of direct physical loss or physical damage to other property, not more than one mile from the premises. . . ." (ECF No. 11-1 at 16.)

### B.    The Virus Exclusion

The Policy includes a Virus Exclusion that excludes coverage for any "loss or damage, including economic loss, cause by" any "virus, bacteria or other microorganism that cause or could cause physical illness, disease or disability. . . ." (ECF No. 11-1 at 19, 22.) Kessler Dental alleges that the Insurance Services Office ("ISO") and the American Association of Insurance Services ("AAIS") made false statements to various state regulators seeking approval of this Virus Exclusion. In particular, it claims that they represented that the Virus Exclusion only clarified that commercial property policies did not cover disease-causing agents, even though some courts had concluded otherwise. The Amended Complaint claims that the trade groups "represented hundreds of insurers," but it does not say whether they represented Dentists Insurance. (ECF No. 11 at ¶¶ 83-84.)

### C.    The Shutdown Orders

On March 19, 2020, Pennsylvania Governor Tom Wolf required all non-life sustaining businesses to close to prevent the spread of Covid-19, a highly contagious respiratory virus that, to date, has infected over 14 million of people in

the United States and has claimed the lives of over 270,000 Americans. Covid-19 is transmittable through contact with surfaces and through exposure to airborne particles. On March 23, 2020 Governor Wolf issued a stay-at-home order for residents of various counties in Pennsylvania, including Chester County, where Kessler Dental is located. This order required residents to say at home "except as needed to access, support, or provide life sustaining business, emergency, or government service." (ECF No. 11-6.) Subsequently, the Pennsylvania Department of Health prohibited all non-emergency dental procedures. (*See* ECF No. 11-7.) And on April 1, 2020, the Governor extended the stay-at-home order to the entire Commonwealth. (See ECF No. 11-8.)

As a result of these orders and based on the Department of Health guidance, Kessler Dental had to close its office for all non-emergency dental services. Kessler Dental submitted a claim for its lost income during the suspension period. On May 20, 2020, The Dentist Insurance Company denied Kessler Dental's claim because it did not satisfy the Policy's Dental Income or Civil Authority coverage provisions and was also subject to the Policy's Virus Exclusion.

### D.     Procedural History

On October 23, 2020, Kessler Dental filed an Amended Complaint against The Dentist Insurance Company for declaratory judgment and breach of contract for failure to provide coverage under the Policy. Before the Court is Dentists Insurance's motion to dismiss for failure to state a claim.

4

## II.    LEGAL STANDARD

A district court may dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

A claim has facial plausibility when the complaint contains factual allegations that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In doing so, the court must "draw on its judicial experience and common sense." *Id.* (same). Under the governing "pleading regime[,]" a court confronted with a 12(b)(6) motion must take three steps. First, it must identify the elements needed to set forth a particular claim. *Id.* at 878.  Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citations omitted).

III.     DISCUSSION

The parties agree that Pennsylvania insurance law applies. Under Pennsylvania law, the goal in interpreting an insurance policy, "as with interpreting any contract, is to ascertain the parties' intentions, as manifested by the policy's terms." *Kvaerner Metals Div. of Kvaerner, U.S. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). A court should not consider individual items in isolation. It must consider the entire insurance provision to ascertain the intent of the parties. *See 401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). When policy language is clear and unambiguous, a court applying Pennsylvania law must give effect to that language. *See Kvaerner Metals*, 908 A.2d at 897. When a provision in the policy is ambiguous, a court must construe the policy "in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *401 Fourth St.*, 879 A.2d at 171. "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (quote omitted).

A.     The Virus Exclusion

The Virus Exclusion applies to any "loss or damage, including economic loss, caused by" any "virus, bacteria or other microorganism that cause or could cause physical illness, disease or disability. . . ." (ECF No. 11-1 at 19 and 22.) The language is not ambiguous. It applies to Covid-19, which is caused by a coronavirus that causes physical illness and distress. *See Brian Handel D.M.D., P.C.*

*v. Allstate Ins. Co.*, Civ. No. 20-3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020) (similar virus exclusion barred coverage).

Kessler Dental argues that the exclusion does not apply to expenses it seeks to recover because those expenses are not a "loss" or a "damage." (See ECF No. 11 at ¶¶ 80-81.) Kessler Dental's argument ignores both the Policy's language and structure. First, the exclusion specifies that it includes economic loss. Next, the Policy uses the word "loss," but it does not define it. The Court must therefore give it its plain and ordinary meaning. *See Pa. Manufacturers' Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co.*, 233 A.2d 548, 551 (Pa. 1967). In the insurance context, a "loss" is the "amount of financial detriment caused by … an insured property's damage." Black's Law Dictionary 1087 (10th ed. 2009). More generally, the word refers to an "undesirable outcome of a risk" (*id.*) or an "amount of money lost by a business or organization" (New Oxford American Dictionary 1033 (3d ed. 2010)). Both the failure to collect income and the payment of continued expenses fall within these definitions of "loss."

Additionally, the Policy's structure indicates that the parties intended the word "loss" to cover both lost income and continuing expenses. Under the Policy, "Loss of Income" includes "Dental Practice Income" and "Action of Civil Authority," both of which include extra expenses. (*See e.g.,* ECF No. 11-1 at 15)(the Policy described that extra expenses are included in determining the amount of "Dental Practice Income.")) Extra expenses are, therefore, included in loss Income. These provisions, read as a whole, demonstrate that the parties

intended the term "loss" to extend to all types of income, including covered expenses. *See Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:20-CV-03342-JDW, 2020 WL 7024287, at *3 (E.D. Pa. Nov. 30, 2020). Moreover, the Virus Exclusion applies to all income that the section of the Policy covers, including expenses.

Kessler Dental asserts that the doctrine of regulatory estoppel prevents Dentists Insurance from raising the virus exclusion to deny coverage. Regulatory estoppel "prohibits parties from switching legal positions to suit their own ends." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192 (Pa. 2001). "A plaintiff must set forth two elements to prove regulatory estoppel: (1) a party made a statement to a regulatory agency; and (2) afterward, the party took a position opposite to the one presented to the regulatory agency." *Simon Wrecking Co. v. AIU Ins. Co.*, 541 F. Supp. 2d 714, 717 (E.D. Pa. 2008). The representations the defendant made in the current litigation must be opposite from the one presented to the regulatory agency, "playing 'fast and loose' with the judicial system." *Id.* at 714.

Kessler Dental has not satisfied either element. Although it alleges that ISO and AAIS made false statements to Pennsylvania state regulators seeking the adoption of the Virus Exclusion, it does not allege that Dentists Insurance was a member of either group or that either group represented Dentists Insurance. But even if the Court were to attribute those trade groups' statements to Dentists Insurance, Kessler Dental does not plead any inconsistency. it alleges that ISO and

AAIS made statements in 2006 representing that property policies were not intended to cover virus-related losses. Dentists Insurance takes the same position here today as the ISO and AAIS did in 2006; it argues that the Virus Exclusion bars coverage. Thus, regulatory estoppel does not apply, even if, as Kessler Dental claims, the insurance trade groups made statements to regulators in 2006 that were at odds with the then-current state of the law.

### B.  Coverage

Even if the Virus Exclusion did not bar coverage, Kessler Dental has not pled facts sufficient to establish that the Policy covers its claim, either under the Dental Income or the Civil Authority coverage.

### 1.  Dental Practice Income

The Parties clash over whether Kessler Dental sustained physical loss or damage. It did not. The text of the Policy is clear; it is meant to cover "direct physical loss of or physical damage to covered property. . . ." (*Id.*) Moreover, the Policy pays for "loss of Dental Practice Income during the period of restoration cause directly by a necessary suspension" where the suspension is "the direct result of a covered loss or damage to insured property." (*Id.*) These provisions make clear that there must be some sort of physical damage to the property.

"[P]hysical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure." *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002). Allegations of physical damage to a building from "sources unnoticeable to the naked eye must meet

a highest threshold." *Id.* at 235. In *Port Authority of New York and New Jersey*, the Third Circuit held that that "asbestos causes physical damage if it is present in such large quantities that it makes the structure "uninhabitable and unusable," but "the mere presence of asbestos, or the general threat of future damage from that presence," is not enough to trigger coverage. *Id.* at 236. There is no reason to think that this would not apply to Covid-19. *See, e.g., Motorists Mut. Ins. Co. v. Hardinger,* 131 F. App'x 823, 826 (3d Cir. 2005); *Brian Handel D.M.D.*, 2020 WL 6545893, at *3.

Although Kessler Dental asserts in its complaint that "Covid-19 virus caused direct physical loss of or damage" to its business (ECF No.11 at ¶ 49), such legal conclusions are not entitled to the presumption of truth. Kessler Dental does not allege that Covid-19 was present on its premises or that it made the structure unusable. Instead, Kessler Dental complains that "[b]ecause business is conducted in an enclosed building, [it] is more susceptible to being or becoming contaminated. . ."(ECF No. 11 at ¶ 103.) But these are indirect "general threat[s] of future damage" and do not demonstrate "physical damage." *Port Auth. of New York & New Jersey*, 311 F.3d at 235.

Kessler Dental's allegation that it was "forced to close the doors of its non-life sustaining business" fails for similar reasons. (ECF No. 11 at 90.) Kessler Dental did not close its dental practice. In fact, no order ever required dental practices to close. Rather, Kessler Dental was able to stay open for emergency procedures. Kessler Dental's business structure was inhabitable and usable, though on a

limited basis. Thus, Kessler Dental has not pled facts that Covid-19 caused physical damage to its business to trigger Dental Practice Income coverage under the Policy.

### 2.   Civil Authority coverage

The Policy's Civil Authority coverage applies only if there is "direct physical loss or physical damage to other property, not more than one mile from the premises. . . ," and if a civil authority prohibits access to the covered property. (ECF No. 11-1 at 16.)  But no civil authority prohibited access to Kessler Dental's practice. The orders prohibited operation of non-life sustaining business and permitted dentists to perform emergency procedures. (ECF No. 11-5.) Additionally, the limits on Kessler Dental's business did not come from damage to a nearby premise or because there was some dangerous physical condition at another nearby premise. They came when state and local authorities ordered the closure of all non-life sustaining business in Pennsylvania and to help stop the spread of Covid-19.

## IV.   CONCLUSION

The Covid-19 pandemic might be unprecedented, particularly in its impact on businesses large and small. But it is not a writ for the Court to rewrite the Policy to which Kessler Dental and Dentists Insurance agreed. That Policy does not provide coverage for the losses that Kessler Dental has suffered. The Court will grant Dentists Insurance motion to dismiss this case. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

December 7, 2020